# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **RONDA WRIGHT-BRODERICK,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 4:13CV1441 SNLJ |
| ) | |
| **SOUTHWESTERN BELL TELEPHONE** ) | |
| **CO., INC., d/b/a AT&T, et al.** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM

Plaintiff Ronda Wright-Broderick brought her four-count complaint in the Circuit Court for St. Louis County, Missouri, on January 3, 2013, against defendants Southwestern Bell Telephone Company, Inc. ("AT&T") and her supervisor John Scott.  Counts I and II of Plaintiff's Petition are brought against AT&T alleging violations of the Missouri Human Rights Act, § 213.010 RSMo *et seq*. ("MHRA"), for sexual discrimination/harassment and racial discrimination, respectively. Counts III and IV are brought against AT&T and Scott respectively for intentional infliction of emotional distress.

Defendants AT&T and Scott were served on January 10, 2013; defendants answered the complaint, and the parties proceeded with discovery for the next several months. Defendants removed this matter to this Court on July 24, 2013 citing this Court's diversity jurisdiction under 28 U.S.C. § 1332(a).  Currently pending before the Court is plaintiff's Motion to Remand (#12) and defendants' Motion for Partial Judgment on the Pleadings (#10), both of which go to this Court's jurisdiction over this matter.  The motions have been fully briefed and are now ripe for disposition.

**I.   Factual Background**

Plaintiff alleges the following facts. She was employed by AT&T at its store in Kirkwood, Missouri. Defendant Scott was her manager, and beginning immediately after she was assigned to Scott's sales team, Scott began making sexually explicit comments to plaintiff. For example, plaintiff alleges that Scott would refer to his genitals suggestively by saying, "I have got a box of salty nuts if anyone wants some." On other occasions, Scott would walk behind plaintiff, and gesture as to tap her behind, without actually making contact, and tell her he would like to "tap that," or that he would like to "tap that ass," the commonly understood reference being that Scott would like to have sex with plaintiff. Plaintiff alleges that Scott would repeatedly thrust his crotch at the back of her head, put his crotch in plaintiff's face, thrust his crotch at plaintiff's buttocks, and make racially discriminatory comments towards plaintiff.[1] Plaintiff also alleged that defendant Scott would treat African-American employees differently than their white counterparts by requiring African-American employees to check in with him while on leave or while out sick when he did not require white employees to do the same. Plaintiff also alleges that defendant Scott threatened to "write-up" plaintiff for not meeting her sales numbers while a fellow white co-worker who consistently failed to meet his numbers never received a "write-up" or threat of a "write-up" from Scott.

Plaintiff filed this lawsuit in state court against her employer AT&T and supervisor Scott with four counts:

- Count I against AT&T for sexual discrimination/harassment under the MHRA
- Count II against AT&T for racial discrimination/harassment under the MHRA

---

[1]The Court's summary of defendant Scott's alleged actions omits additional details contained in the complaint.

- Count III against AT&T for intentional infliction of emotional distress
- Count IV against Scott for intentional infliction of emotional distress

Plaintiff pleads that the above conduct was extreme and outrageous, and by his conduct, Scott "intentionally and recklessly intended to cause plaintiff to suffer severe emotional distress." As a result of the conduct of Scott, plaintiff pleads she has suffered "severe emotional distress," "severe mental anguish, depression, insomnia and emotional distress in the past and may continue to suffer the same in the future," "loss of enjoyment of a normal life," and loss of ability to engage in the same kinds of normal activities. Plaintiff's complaint seeks damages, for each of the four counts, "in excess of" $50,000, plus punitive damages, costs, and attorneys' fees.

As described above, the defendants removed this matter to federal court. The plaintiff seeks to remand the matter back to state court (#12). Defendants have moved for partial judgment on the pleadings (#10) in an effort to dismiss defendant Scott from the lawsuit as a supposedly fraudulently joined defendant.

## II. Discussion

The Eight Circuit has admonished district courts to "be attentive to a satisfaction of jurisdictional requirements in all cases." *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987). The party invoking federal jurisdiction bears the burden of showing that all prerequisites to jurisdiction are satisfied. *Hatridge v. Aetna Cas. & Sur. Co.*, 415 F.2d 809, 814 (8th Cir. 1969). Removal statutes must be strictly construed because they impede upon states' rights to resolve controversies in their own courts. *Nichols v. Harbor Venture, Inc.*, 284 F.3d 857, 861 (8th Cir. 2002). Thus, any doubts about the propriety of removal are resolved in favor of state

3

court jurisdiction and remand. *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997). Here, the defendants assert that this Court has diversity jurisdiction over this matter because the amount in controversy is in excess of $75,000 and there is diversity of citizenship between the parties in accordance with 28 U.S.C. § 1332(a).

Plaintiff's primary argument in favor of remand is that defendants' notice of removal was untimely filed. The removal statute states that "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). Further, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a....other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). It is well-settled that the time limits set forth by the statute are mandatory and that the failure to file a timely notice of removal forecloses the defendant's right to removal. *McHugh v. Physicians Health Plan of Greater St. Louis, Inc.*, 953 F. Supp. 296, 299 (E.D. Mo. 1997).

Here, defendants contend that they were not made aware of this case's removability until they obtained a document in discovery in a similar case brought by a different plaintiff. That document, defendants say, advised the defendants that the amount in controversy was in excess of $75,000. Defendants received the document on July 16, 2013 and removed the case on July 24, 2013, which they state is well within the 30-day window required by Section 1446(b)(3).

Plaintiff contends that defendants were well aware that the amount in controversy exceeded $75,000 upon receipt of the complaint. The Eighth Circuit has held that both punitive damages and attorneys' fees may be considered when determining the jurisdictional amount.

4

*Crawford v. Hoffman-La Roche, Ltd.*, 267 F.3d 760, 765 (8th Cir. 2001); *Capitol Indemnity Corp., v. Miles*, 978 F.2d 437, 438 (8th Cir. 1992); *see also Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount.").

"Many courts have imposed on defendants a duty to establish both diversity of citizenship and amounts in controversy within thirty days of the initial pleading. ... In such cases, the courts note that clues to the jurisdictional sufficiency exist in the initial petition." *McHugh v. Physicians Health Plan of Greater St. Louis, Inc.*, 953 F. Supp. 296, 300 (E.D. Mo. 1997) (collecting cases) (internal citations omitted).  Plaintiff points out that she seeks damages in excess of $50,000, plus punitive damages and attorneys' fees.  Defendants state that plaintiff was "ambiguous in her pleadings and in discovery regarding the amount in controversy" (#18 at 1).  But the face of her pleading demands at least $50,000 from defendant AT&T and at least $50,000 from defendant Scott,[2] plus punitive damages and fees.  Plaintiff alleged multiple, serious discriminatory acts that occurred over a two-year period of time.  Under those

---

[2]Neither plaintiff nor defendants address the rule that "a single plaintiff may properly aggregate all of the claims which he has against the defendants to satisfy the jurisdictional amount." *Lynch v. Porter*, 446 F.2d 225, 228 (8th Cir. 1971). *See also Franklin v. Pinnacle Entm't, Inc.*, 4:12-CV-307 CAS, 2012 WL 1280272, *5 (E.D. Mo. Apr. 16, 2012) (holding that aggregate value of each individual plaintiff's employment discrimination claims appeared to be $61,000 and reserving ruling on whether jurisdictional requirements were met); *Dowell v. Debt Relief America, L.P.*, 2:07 CV 27(JCH), 2007 WL 1876478, *2 (E.D. Mo. June 27, 2007) (discussing aggregation of individual claims in addition to punitive damages and attorney's fees and holding that the amount in controversy requirement had been met).  The Court does not opine on whether the plaintiff's four counts may be properly aggregated to total $200,000.  Although they are not pleaded in the alternative, some of the counts may seek the same relief based on the same set of facts.  *See, e.g.*, *Franklin*, 2012 WL 1280272, *8.  However, plaintiff's "in excess of" $50,000 demand plus punitive damages and attorneys' fees was enough to establish the amount in controversy on its own under the circumstances, as discussed further below.

5

circumstances, even a single demand "in excess of" $50,000 plus punitive damages and attorneys' fees should have provided defendants with more than a "clue" that the amount in controversy was met here.  In *Dowell*, for example, this Court held that although the plaintiff's state law statutory damages were probably less than $10,000, the possibility of punitive damages and attorney's fees "means that a fact finder could legally conclude that Plaintiff's damages are greater than $75,000."  2007 WL 1876478, at *2.

Defendants' suggestion that they did not have reason to believe federal jurisdiction existed until they received a document through discovery in a related case is unavailing.  Because plaintiff's complaint disclosed that the amount in controversy met federal jurisdictional requirements in January 2013, the July 2013 notice of removal was untimely.  As a result, the Court need not address whether defendant Scott was fraudulently joined.  This matter will be remanded to state court.

The Court declines to award plaintiff her attorneys fees and costs incurred as a result of this removal.

Dated this   7th   day of November, 2013

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE